Jahan C. Sagafi (SBN 227887)
jsagafi@outtengolden.com
Katrina L. Eiland (SBN 275701)
keiland@outtengolden.com
**OUTTEN & GOLDEN LLP**
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Meredith Desautels (SBN 259725)
mdesautels@lccr.com
Stephanie Funt (SBN 300152)
sfunt@lccr.com
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA**
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone:  (415) 543-9444
Facsimile:  (415) 543-0296

*Attorneys for Plaintiff and proposed Class Members*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| PETER LEE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE HERTZ CORPORATION, DOLLAR THRIFTY AUTOMOTIVE GROUP, INC.; STERLING INFOSYSTEMS, INC. d/b/a "STERLINGBACKCHECK," and DOES 1-20, inclusive, <br><br> Defendants. | **COMPLAINT FOR VIOLATIONS OF FCRA** <br><br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Peter Lee, individually and on behalf of all others similarly situated, alleges, upon personal knowledge as to himself and upon information and belief as to other matters, as follows:

**INTRODUCTION**

1. Plaintiff Peter Lee ("Plaintiff" or "Mr. Lee") brings this case as a class action pursuant to the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against the Hertz Corporation and its subsidiary, Dollar Thrifty Automotive Group, Inc. ("Hertz"), and Sterling Infosystems, Inc., d/b/a SterlingBackcheck ("Sterling") (collectively, "Defendants").

2. Hertz routinely rejects job applicants, including Mr. Lee, based on information contained in background check reports ("consumer reports") that it obtains from background check companies called "consumer reporting agencies" or "CRAs," such as Sterling.

3. In doing so, Hertz fails to strictly comply with federal law governing the procurement and use of consumer reports for employment purposes.

4. Sterling, one of the largest consumer reporting agencies in the United States, provides consumer reports to companies, including Hertz, to be used for employment purposes, such as making hiring decisions.

5. In doing so, Sterling fails to strictly comply with federal law governing the procurement and use of consumer reports for employment purposes.

6. Specifically, Hertz systematically violates section 1681b(b)(3)(A) of the FCRA by using consumer reports to make adverse employment decisions without first providing the applicant who is the subject of the report with sufficient and timely notification of its intent to take an adverse action, a copy of the report, and a summary of the applicants' rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).

7. Sterling also violates section 1681b(b)(3)(A) of the FCRA by failing to timely provide applicants with appropriate pre-adverse action disclosures, including a copy of the relevant consumer report and a written description of the applicant's rights under the FCRA, in violation of FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).

Complaint for Violations of FCRA

8.      Before procuring consumer reports from Sterling and/or other CRAs, Hertz also fails to inform job applicants in a clear and conspicuous disclosure in writing, in a document that consists solely of the disclosure, that it may procure a consumer report for employment purposes, in violation of U.S.C. § 1681b(b)(2)(A)(i).

9.      Hertz similarly fails to obtain authorization of job applicants in writing to procure such consumer reports, in violation of U.S.C. § 1681b(b)(2(A)(ii).

10.     Sterling has further violated the FCRA by failing to notify job applicants when it furnishes consumer reports that are likely to adversely affect the applicants' ability to obtain employment and failing to follow strict procedures to ensure the timely and complete nature of those reports, in violation of U.S.C. § 1681k(a).

11.     Defendants have violated the above-mentioned provisions of the FCRA willfully and pursuant to their respective companywide policies and procedures.

12.     On behalf of himself and others similarly situated, Plaintiff seeks injunctive and declaratory relief; statutory and/or actual damages; punitive damages; pre-judgment and post-judgment interest; and reasonable attorneys' fees, costs, and expenses associated with this action.

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction over Plaintiff's FCRA claims pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

15.     This Court has personal jurisdiction over this matter because Defendants conduct substantial business activity in this District, and because many of the unlawful acts described herein occurred in this District and gave rise to the claims alleged.

## INTRADISTRICT ASSIGNMENT

16.     A substantial part of the events or omissions which give rise to the claims occurred in San Francisco County and/or adjacent counties in the San Francisco Division, and

Complaint for Violations of FCRA

1    therefore this action is properly assigned to the San Francisco Division pursuant to Local Rule 3-

2    2(c),(d).

3                                 **PARTIES**

4    **Plaintiff**

5        ***Peter Lee***

6          17.     Plaintiff Peter Lee is an African-American man who lives in Richmond,

7    California.

8          18.     In May 2014, while employed in a similar position with a competing company,

9    Mr. Lee applied and interviewed for the position of counter sales representative with Hertz's

10    Dollar/Thrifty-branched rental car location at the San Francisco International Airport.

11         19.     Mr. Lee and other Hertz job applicants are "consumers" as defined by the FCRA,

12    15 U.S.C. § 1681a(c).

13    **Defendants**

14        ***Hertz Corporation***

15         20.     Hertz Corporation operates the Hertz, Dollar, Thrifty and Firefly car rental brands

16    in more than 11,000 corporate and licensee locations in approximately 140 countries.

17         21.     Hertz Corporation is the largest worldwide airport general use car rental company

18    with more than 1,700 airport locations in the U.S.

19         22.     Hertz Corporation is registered as a Delaware corporation and maintains its

20    headquarters at 999 Vanderbilt Beach Road in Naples, Florida.

21         23.     Hertz Corporation owns and operates the relevant Dollar/Thrifty-branded car

22    rental office located at the San Francisco International Airport at 780 McDonnell Road, San

23    Francisco, California, through its wholly-owned subsidiary, Dollar Thrifty Automotive Group,

24    Inc.

25         24.     At all relevant times, Hertz  Corporation has been a "person" using "consumer

26    reports" of Mr. Lee and similarly situated applicants for "employment purposes," and has taken

27    "adverse action" against Plaintiff and similarly situated applicants, as defined under 15 U.S.C. §

28

Complaint for Violations of FCRA

1681a.  These adverse actions have been based wholly or in part on those consumer reports.

### ***Dollar Thrifty Automotive Group***

25.     Dollar Thrifty Automotive Group, Inc. is wholly owned and operated by the Hertz Corporation.

26.     There are approximately 340 Dollar and Thrifty corporate locations in the United States and Canada.

27.     Dollar Thrifty Automotive Group, Inc. is a Delaware Corporation and maintains it headquarters at 5330 E. 31st Street, Tulsa, Oklahoma.

28.     At all relevant times, Dollar Thrifty Automotive Group, Inc. has been a "person" using "consumer reports" of Mr. Lee and similarly situated applicants for "employment purposes," and has taken "adverse action" against Plaintiff and similarly situated applicants, as defined under 15 U.S.C. § 1681a.  These adverse actions have been based wholly or in part on those consumer reports.

### ***Sterling***

29.     Sterling is a private New York-based corporation self-described as "the world's largest company focused entirely on background checks," with some 20,000 customers and 2,700 employees spread among offices in the United States, Canada, the U.K., India, and the Philippines.

30.     Sterling has enjoyed exponential growth over the past 15 years, with annual revenue increasing from approximately $7.5 million in 2001 to $250 million in 2013, as employers increasingly conduct background checks on prospective and current employees. Sterling's founder and chief executive officer stated in 2013 that he expected the company to surpass $1 billion in annual revenue by 2018.

31.     Through a combination of organic growth, an influx in investment capital, and aggressive pursuit of competitor agencies and complementary firms, Sterling has greatly expanded its geographic reach, consumer report volume, and annual revenue over the past 15 years.

Complaint for Violations of FCRA

32.     As of 2013, Sterling conducted a reported 16 million background searches every year for employers.

33.     Sterling has maintained an operational center in Mumbai, India since at least 2006.  In November 2013, Sterling reportedly consolidated its global operations there, and entrusted an executive in the Mumbai office with oversight over global quality assurance in consumer reports (including the duty to ensure reports' accuracy and timeliness).

34.     Sterling is a "consumer reporting agency" for purposes of FCRA compliance pursuant to 15 U.S.C. § 1681a(f), and a "person" as described in 15 U.S.C. § 1681a(a).

## STATEMENT OF FACTS

### Background Information

35.     Sterling is among the largest of the nation's employment background screening companies, i.e., those that provide "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to employers.

36.     In order to provide these consumer reports, Sterling investigates and reviews public record databases and assembles and/or maintains consumer files which contain public record information concerning, among other things, the alleged criminal record history of individuals.  Sterling then sells this information to employers, including Hertz.

37.     Upon information and belief, as part of the services Sterling offers to its employer customers, Sterling agrees to send FCRA- required "pre-adverse action" notices to consumers on behalf of its employer-customers.  Upon information and belief, Hertz has contracted with Sterling to provide this service.

### Plaintiff Lee's Experience

38.     In June 2012, while in Richmond, California, visiting relatives, Mr. Lee was arrested.

39.     Mr. Lee was subsequently charged with felony possession of a controlled substance for sale with a gang enhancement (the "June 2012 charges").

40.     While the June 2012 charges were pending, in May 2014, Hertz personnel

Complaint for Violations of FCRA

recruited Mr. Lee to interview for a counter sales representative position with Hertz at its Dollar/ Thrifty-branded car rental location at San Francisco International Airport.

41.     At the time Hertz recruited him for a position with the company, Mr. Lee worked for a competitor car rental company in a similar position.

42.     Mr. Lee interviewed for the position with Hertz sometime in the first half of May 2014.  At the close of the interview, Mr. Lee was given an offer of employment, pending the processing of his application materials.

43.     To begin this process, a Hertz representative instructed Mr. Lee to complete an online application by following a link sent to him via email.

44.     Mr. Lee completed the online application as instructed.

45.     On May 15, 2014, Mr. Lee received an email from Kimberly Kowallis ("Ms. Kowallis"), a field recruiter for Hertz, confirming his conditional offer of employment.

46.     On May 27, 2014, after Mr. Lee had passed Hertz's mandatory drug screening, he received an email from Ms. Kowallis with a link to an addendum to the Hertz application specific to California and Hawaii.  The email requested that Mr. Lee complete the online application addendum.

47.     Mr. Lee completed the online application addendum as instructed.

48.     Also on May 27, 2014, Mr. Lee received an email from Ms. Kowallis with the subject line "Hertz Orientation Package."  This email provided information about Mr. Lee's onboarding with Hertz.

49.     Ms. Kowallis subsequently scheduled Mr. Lee to begin working for Hertz on June 9, 2014.  After receiving confirmation of his start date with Hertz, Mr. Lee provided a notice of resignation, effective June 9, 2014, to his then-current employer.

50.     At some point during the processing of Mr. Lee's application, Hertz obtained one or more consumer reports from Sterling containing information about Mr. Lee's background, one or more of which included information regarding the June 2012 criminal charges pending against Mr. Lee.

Complaint for Violations of FCRA

51.     At no point during the processing of his employment application did Hertz provide Mr. Lee with a clear and conspicuous disclosure in the form of a written document that consisted solely of the disclosure, that it may obtain a consumer report for employment purposes, as required by 15 U.S.C. § 1681b(b)(2)(A)(i).

52.     Likewise, at no point during the processing of Mr. Lee's employment application did Hertz obtain Mr. Lee's authorization in the form of a written document for the procurement of a consumer report, as required by 15 U.S.C. § 1681b(b)(2)(A)(ii).

53.     On June 3, 2014, Mr. Lee received a call from Ms. Kowallis informing him that Hertz would not hire him because of the criminal history information contained in his background check.  Ms. Kowallis told Mr. Lee that she could not do anything about his rejection because the decision was based on "Hertz policy."

54.     Mr. Lee asked Ms. Kowallis for a copy of the background check information that Hertz had obtained and was instructed to contact Sterling.

55.     Later that same day, Mr. Lee received an email from Ms. Kowallis confirming that Hertz had, indeed, rescinded his job offer because he did not meet the company's "background qualifications."

56.     As a result of the criminal history information contained in the consumer report it procured from Sterling, Hertz stopped the onboarding process, and did not move forward with the job that it had offered Mr. Lee.

57.     After Ms. Kowallis informed Mr. Lee that he would not be hired because of criminal history information contained in his background check on June 3, 2014, Mr. Lee contacted Sterling by phone and requested a copy of the consumer report that Sterling provided to Hertz in connection with Mr. Lee's application for employment.

58.     In response to Mr. Lee's request, sometime on or after June 3, 2014, Sterling sent Mr. Lee by regular mail a copy of a consumer report prepared by Sterling, which included information about the June 2012 charges (the "June 3rd package").  Mr. Lee did not receive a copy the June 3rd package until sometime after June 3, 2014.

Complaint for Violations of FCRA

59.     Sometime on or after June 4, 2014, Sterling sent to Mr. Lee by regular mail an undated letter that was inaccurately entitled "Pre-Adverse Action Notice," and which bore Hertz corporate logo (the "June 4th Letter""). Enclosed with the June 4th letter was a copy of a consumer report prepared by Sterling dated June 4, 2014, which contained information about the June 2012 charges.

60.     Mr. Lee did not receive the June 4th Letter, which upon information and belief, was sent by Sterling pursuant to its contract with Hertz, until sometime after June 4, 2014.

61.     The June 4th Letter informed Mr. Lee that, based on a "Criminal Report" provided by Sterling, Hertz was considering revoking Mr. Lee's conditional offer of employment, subject to Mr. Lee successfully challenging the accuracy of the criminal report information.

62.     At the time that Sterling mailed Mr. Lee the June 3rd package and the June 4th letter (as well as at the time Mr. Lee received them), however, Sterling had already provided Hertz with a copy of Mr. Lee's consumer report containing information about the June 2012 criminal charges, and Hertz had already revoked Mr. Lee's conditional offer of employment based upon information contained in that consumer report.

**Factual Allegations Common to All Class Members**

63.     Employers commonly use criminal background screening reports to determine employment eligibility. A significant percentage of these reports, however, contain incomplete, inaccurate, misleading, or improper records that can erroneously disqualify a job applicant or employee. Recognizing this danger, Congress provided strict reporting and disclosure requirements in the FCRA to ensure that prospective employees have the opportunity to review reports summarizing their background information and to contest any inaccuracies and illegal disclosures and/or provide additional information before these reports influence employment decisions.

64.     The FCRA requires that "before taking any adverse action based in whole or in part on [a consumer report]," the employer taking the adverse action must provide "the consumer

Complaint for Violations of FCRA

to whom the report relates" with:

> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3).

15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).

65. The FCRA defines adverse action as either "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee," or "any action taken or determination that is . . . adverse to the interests of the consumer." 15 U.S.C. §§ 1681a(k)(l)(B).

66. A consumer reporting agency's delivery of a consumer report containing information likely to prove detrimental to the consumer's ability to secure employment is an "adverse action" in itself under this section. *See Mattiaccio v. DHA Grp., Inc*., No. 12 Civ. 1249, 2014 WL 717780, at *6 (D.D.C. Feb. 26, 2014) (citing *Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 332 (D. Conn. 2009) (summary judgment denied on grounds that a reasonable jury could deem CRA's delivery of negative consumer report a FCRA "adverse action")).

67. Hertz and Sterling have routinely and systematically failed to provide Plaintiff and other job applicants with a copy of their consumer reports prior to taking adverse actions against them.

68. Hertz and Sterling further have routinely and systematically failed to provide Plaintiff and other job applicants with a summary of their rights under the FCRA prior to taking adverse actions against them.

69. The FCRA also requires that employers "may not procure a consumer report or cause a consumer report to be procured, for employment purposes with respect to any consumer," unless:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document

Complaint for Violations of FCRA

that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii)     the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(B)(2)(A)(i) and (ii).

70.     Hertz routinely and systematically violates these provisions by failing to (1) provide "clear and conspicuous" disclosures in writing, in a document that consists solely of the disclosures, that a consumer report may be obtained and (2) obtain applicants' authorization in writing to procure a consumer reports for employment purposes.

71.     Finally, the FCRA mandates that any consumer reporting agency that "furnishes a consumer report for employment purposes" and, in so doing, "compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon the consumer's ability to obtain employment" shall:

1)   at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

2)   maintain strict procedures designed to [ensure] that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

15  U.S.C. § 1681k(a)(1) and (2).

72.     Sterling routinely and systematically fails to provide consumers with timely notice of its reporting of public-record information likely to have an adverse effect on the consumer's ability to obtain employment.  Sterling also routinely and systematically fails to maintain strict procedures to ensure that the public record information that it reports is complete and current.  *See Poore v. Sterling Testing Sys.*, 410 F. Supp. 2d 557, 572 (E.D. Ky. 2006) (expressing concern over the absence of "any information regarding any procedures that Sterling may employ to ensure" the accuracy of information received from various subsidiaries and

Complaint for Violations of FCRA

affiliates); *Jones v. Sterling Infosystems, Inc.*, No. 14-cv-3076 (S.D.N.Y.).

73.     In failing to fulfill either of these obligations, Sterling systematically violates 15 U.S.C. § 1681k(a).

74.     Defendants have acted willfully in violating the requirements of the FCRA. Defendants knew or should have known about their obligations under the FCRA.  These obligations are well-established by the plain language of the FCRA and in the promulgations and opinion letters of the Federal Trade Commission.

75.     Despite Defendants' awareness of their legal obligations, Defendants have acted consciously in breaching their known duties and depriving Plaintiff and other job applicants of their rights under the FCRA.

76.     At a minimum, Defendants' conduct has been reckless in failing to make an appropriate inquiry to ascertain its obligations under the FCRA.

## CLASS ACTION ALLEGATIONS

77.     Mr. Lee brings this Class Action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and five classes of persons.

78.     Plaintiff asserts the First, Second, Third, and Fourth Causes of Action against Hertz and Sterling on behalf of the "FCRA Consumer Report Copy Class" and "FCRA Summary of Rights Class" defined as follows:

> **FCRA Consumer Report Copy Class:** All applicants for employment with Hertz in the United States within five years of the filing of this complaint through the date of final judgment who were subject to an adverse action based in whole or in part on information contained in a consumer report without receiving a copy of the consumer report at least five business days prior to the adverse action, as required by 15 U.S.C. § 1681b(b)(3)(A)(i).

> **FCRA Summary of Rights Class:** All applicants for employment with Hertz in the United States within five years of the filing of this complaint through the date of final judgment who were subject to an adverse action based in whole or in part on information contained in a consumer report without receiving a written description of their rights under the FCRA at least five business days prior to the adverse action, as required by 15 U.S.C. § 1681b(b)(3)(A)(ii).

Complaint for Violations of FCRA

79.     Plaintiff asserts the Fifth and Sixth Causes of Action against Hertz on behalf of the "FCRA Disclosure Class" and the "FCRA Authorization Class" defined as follows:

> **FCRA Disclosure Class:** All applicants for employment with Hertz in the United States within five years of the filing of this complaint through the date of final judgment about whom Hertz procured a consumer report without providing a clear and conspicuous disclosure in writing, in a document that consisted solely of the disclosure, prior to procuring the consumer report, as required by 15 U.S.C. § 1681b(b)(2)(A)(i).

> **FCRA Authorization Class:** All applicants for employment with Hertz in the United States within five years of the filing of this complaint through the date of final judgment about whom Hertz procured a consumer report without obtaining the applicants' authorization in writing prior to procuring the consumer report, as required by 15 U.S.C. § 1681b(b)(2)(A)(ii).

80.     Plaintiff asserts the Seventh Cause of Action against Sterling on behalf of the "Adverse Public-Record Information Class" defined as follows:

> **Adverse Public-Record Information Class:** All applicants for employment with Hertz in the United States, except for in New York State, within five years of the filing of this complaint through the date of final judgment about whom Sterling delivered a consumer report to Hertz containing public-record information likely to adversely affect the applicant's ability to obtain employment without either providing advance notice to the affected applicant or maintaining strict procedures to ensure the information reported was complete and up to date, as required by 15 U.S.C. § 1681k(a).

81.     The members of the FCRA Consumer Report Copy Class, FCRA Summary of Rights Class, the FCRA Disclosure Class, the FCA Authorization Class, and the Adverse Public-Record Information Class are collectively referred to as "Class Members."

82.     Plaintiff reserves the right to amend the definition of above-defined classes based on discovery or legal developments.

83.     The Class Members identified herein are so numerous that joinder of all members is impracticable.  Hertz employs over 30,000 workers worldwide, with the vast majority located within the United States.  Although Plaintiff does not know the precise number of job applicants

harmed by Defendants' violations of FCRA, the number is far greater than feasibly could be addressed through joinder.  The precise number is also uniquely within Defendants' possession.

84.     There are questions of law and fact common to Class Members, and these questions predominate over any questions affecting only individual members.  Common questions include, among others:

a.   whether Defendants violated FCRA by taking adverse action, based wholly or in part on information contained a consumer report, against Plaintiff and other members of the FCRA Consumer Report Copy Class without first providing them with a copy of the consumer report and at least five business days to respond, as required by 15 U.S.C. § 1681b(b)(3)(A)(i);

b.   whether Defendants violated FCRA by taking adverse action, based wholly or in part on information contained in a consumer report, against Plaintiff and other members of the FCRA Summary of Rights Class without first providing them with a written summary of their rights under FCRA and at least five business days to respond, as required by 15 U.S.C. § 1681b(b)(3)(A)(ii);

c.   whether Hertz violated FCRA by failing to provide Plaintiff and the FCRA Disclosure Class with a clear and conspicuous disclosure in writing, in a document that consisted solely of the disclosure, prior to procuring their consumer reports for employment purposes, as required by 15 U.S.C. § 1681b(b)(2)(A)(i);

d.   whether Hertz violated FCRA by failing to obtain from Plaintiff and the FCRA Authorization Class authorization in writing prior to procuring their consumer reports for employment purposes, as required by 15 U.S.C. § 1681b(b)(2)(A)(ii);

e.   whether Sterling violated FCRA by failing either to inform Plaintiff of the Adverse Public-Record Information Class of its intent to deliver public-record information likely to adversely affect their ability to obtain employment or to maintain strict procedures sufficient to ensure that the adverse public-record information was complete and up to date;

f.   whether Defendants were willful in their noncompliance with the requirements of FCRA;

Complaint for Violations of FCRA

g. whether Defendants were negligent in their noncompliance with the requirements of FCRA; and

h. whether equitable remedies, injunctive relief, statutory damages, compensatory damages, and punitive damages for Class Members are warranted.

85. Mr. Lee is a member of the classes he seeks to represent. Defendants failed to provide Mr. Lee with a copy of the consumer report or a notice of his rights under FCRA prior to taking adverse action against him, as required by 15 U.S.C. § 1681b(b)(3)(A) (i) and (ii). Additionally, Hertz failed to provide Mr. Lee with a clear and conspicuous disclosure in writing, in a document consisting solely of the disclosure, or obtain from Mr. Lee authorization in writing to procure a consumer report for employment purposes prior to procuring such a report, as required by 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii). Finally, Sterling failed to either inform Mr. Lee of its reporting to Hertz of public record information likely to adversely affect his ability to secure employment, or to maintain strict procedures sufficient to ensure that the information was complete and up to date, prior to delivering the information to Hertz, as required under 15 U.S.C. § 1681k(a).

86. Plaintiff's claims are typical of the claims of the classes he seeks to represent. Upon information and belief, it is Defendants' standard practice to take adverse action against applicants without first providing affected individuals with a copy of their consumer reports and a written summary of their rights under FCRA. Additionally, upon information and belief, it is Hertz's standard practice to procure consumer reports without first providing a clear and conspicuous disclosure in writing to applicants, in a document that consists solely of the disclosure, or obtaining their written authorization. Finally, upon information and belief, it is Sterling's standard practice to deliver to Hertz public-record information likely to prove detrimental to the ability of applicants to obtain employment without first (a) notifying the applicants of the fact that the public record information is being reported and the name and address of the recipient; or (b) maintaining strict procedures to ensure the information is

complete and up to date.  Mr. Lee is entitled to relief under the same causes of action as other Class Members.

87.     Mr. Lee will fairly and adequately represent and protect the interests of the Class Members.  Mr. Lee has retained counsel who are competent and experienced in complex class actions, employment litigation, and the intersection thereof.  There is no conflict between Mr. Lee and the Class Members.

88.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because the Defendants have acted and/or refused to act on grounds generally applicable to the Class Members, making declaratory and injunctive relief appropriate with respect to Mr. Lee and the Class Members as a whole.   The Class Members are entitled to injunctive relief to end Defendants' common, uniform, unfair discriminatory—and illegal— policies and practices.

89.      Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices.  Because Defendants have maintained a common policy of failing to properly inform Class Members of their rights under FCRA, many Class Members are likely unaware that their rights have been violated.

90.     The amount of each Class Member's individual claim is also small compared to the expense and burden of individual prosecution of this litigation.  The FCRA has statutorily specified damages, which Class Members will prove at trial are warranted, that will render calculation of damages for Class Members highly straightforward.  The propriety and amount of punitive damages are based on Defendants' conduct, making these issues common to Class Members.

Complaint for Violations of FCRA

# CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
**Hertz's Failure to Provide Consumer Report Copy Prior to Taking Adverse Action
(15 U.S.C. § 1681b(b)(3)(A)(i), Brought by Plaintiff on Behalf of
Himself and the FCRA Consumer Report Copy Class)**

91.     Plaintiff incorporates the preceding paragraphs as alleged above.

92.     Hertz procured consumer reports containing information regarding Plaintiff and the FCRA Consumer Report Copy Class Members from a consumer reporting agency.

93.     Hertz took adverse employment actions against Plaintiff and the FCRA Consumer Report Copy Class Members based in whole or in part on the information contained within those consumer reports.

94.     Prior to taking these adverse employment actions, Hertz failed to provide Plaintiff and each FCRA Consumer Report Copy Class Member with a copy of his or her consumer report and a reasonable amount of time to respond.

95.     As a result of Hertz's actions, Plaintiff and the FCRA Consumer Report Copy Class Members have been deprived of their consumer rights and prevented from timely and effectively contesting the adverse action.

96.     Hertz's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

97.     Alternatively, Hertz's actions were negligent, rendering it liable for actual damages, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o.

## SECOND CLAIM FOR RELIEF
**Hertz's Failure to Provide Summary of Rights Prior to Taking Adverse Action
(15 U.S.C. § 1681b(b)(3)(A)(ii), Brought by Plaintiff on Behalf of
Himself and the FCRA Summary of Rights Class)**

98.     Plaintiff incorporates the preceding paragraphs as alleged above.

99.     Hertz procured consumer reports containing information regarding Plaintiff and the FCRA Summary of Rights Class Members from a consumer reporting agency.

Complaint for Violations of FCRA

100.    Hertz took adverse employment actions against Plaintiff and the FCRA Summary of Rights Class Members based in whole or in part on the information contained within those consumer reports.

101.    Prior to taking these adverse employment actions, Hertz failed to provide Plaintiff and each FCRA Summary of Rights Class Member with a summary of his or her rights under FCRA and a reasonable amount of time to respond.

102.    As a result of Hertz's actions, Plaintiff and the FCRA Summary of Rights Class Members have been deprived of their consumer rights and prevented from timely and effectively contesting the adverse action.

103.    Hertz's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

104.    Alternatively, Hertz's actions were negligent, rendering it liable for actual damages, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o.

<u>THIRD CLAIM FOR RELIEF</u>
**Sterling's Failure to Provide Consumer Report Copy Prior to Taking Adverse Action
(15 U.S.C. § 1681b(b)(3)(A)(i), Brought by Plaintiff on Behalf of
Himself and the FCRA Consumer Report Copy Class)**

105.    Plaintiff incorporates the preceding paragraphs as alleged above.

106.    Sterling has compiled and delivered to Hertz consumer reports containing information regarding Plaintiff and the FCRA Consumer Report Copy Class Members that were likely to prove harmful to the ability of Plaintiff and the FCRA Consumer Report Copy Class Members to obtain employment.

107.    Each instance of delivery of this information constituted an adverse action as defined by FCRA and prevailing case law.

108.    Prior to taking these adverse employment actions, Sterling failed to provide Plaintiff and each FCRA Consumer Report Copy Class Member with a copy of his or her consumer report.

Complaint for Violations of FCRA

109.     As a result of Sterling's actions, Plaintiff and the FCRA Consumer Report Copy Class Members have been deprived of their consumer rights and prevented from timely and effectively contesting the adverse action.

110.     Sterling's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

111.     Alternatively, Sterling's actions were negligent, rendering it liable for actual damages, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o.

### FOURTH CLAIM FOR RELIEF
**Sterling's Failure to Provide Summary of Rights Prior to Taking Adverse Action
(15 U.S.C. § 1681b(b)(3)(A)(ii), Brought by Plaintiff on Behalf of
Himself and the FCRA Summary of Rights Class)**

112.     Plaintiff incorporates the preceding paragraphs as alleged above.

113.     Sterling has compiled and delivered to Hertz consumer reports containing information regarding Plaintiff and the FCRA Summary of Rights Class Members that were likely to prove harmful to the ability of Plaintiff and the FCRA Summary of Rights Class Members to obtain employment.

114.     Each instance of delivery of this information constituted an adverse action as defined by FCRA and prevailing case law.

115.     Prior to taking these adverse employment actions, Sterling failed to provide Plaintiff and each FCRA Summary of Rights Class Member with a summary of his or her rights under FCRA.

116.     As a result of Sterling's actions, Plaintiff and the FCRA Summary of Rights Class Members have been deprived of their consumer rights and prevented from timely and effectively contesting the adverse action.

117.     Sterling's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court

Complaint for Violations of FCRA

pursuant to 15 U.S.C. § 1681n.

118.    Alternatively, Sterling's actions were negligent, rendering it liable for actual damages, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o.

## FIFTH CLAIM FOR RELIEF
**Hertz's Failure to Provide Clear and Conspicuous Disclosure Prior to Procurement of Consumer Report**
**(15 U.S.C. § 1681b(b)(2)(A)(i), Brought by Plaintiff on Behalf of Himself and the FCRA Disclosure Class)**

119.    Plaintiff incorporates the preceding paragraphs as alleged above.

120.    Hertz procured consumer reports containing information regarding Plaintiff and the FCRA Disclosure Class Members from a consumer reporting agency for employment purposes without first providing clear and conspicuous notice in writing, in a document that consisted solely of the disclosure, that a consumer report may be obtained for employment purposes.

121.    As a result of Hertz's actions, Plaintiff and the FCRA Disclosure Class Members have been deprived of their consumer rights and prevented from making informed decisions about whether to permit Hertz to procure their personal information.

122.    Hertz's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

123.    Alternatively, Hertz's actions were negligent, rendering it liable for actual damages, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o.

## SIXTH CLAIM FOR RELIEF
**Hertz's Failure Obtain Written Authorization Prior to Procurement of Consumer Report**
**(15 U.S.C. § 1681b(b)(2)(A), Brought by Plaintiff on Behalf of Himself and the FCRA Authorization Class)**

124.    Plaintiff incorporates the preceding paragraphs as alleged above.

125.    Hertz procured consumer reports containing information regarding Plaintiff and

Complaint for Violations of FCRA

the FCRA Authorization Class Members from a consumer reporting agency for employment

purposes without first obtaining their authorization in writing for the procurement of the report.

126.    As a result of Hertz's actions, Plaintiff and the FCRA Authorization Class

Members have been deprived of their consumer rights and prevented from making informed

decisions about whether or not to permit Hertz to procure their personal information.

127.    Hertz's conduct was willful, making it liable for actual or statutory damages,

punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n.

128.    Alternatively, Hertz's actions were negligent, rendering it liable for actual

damages, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o.

### SEVENTH CLAIM FOR RELIEF
**Sterling's Failure to Either Provide Notice or Maintain Strict Procedures to Ensure
Completeness and Currency of Public-Record Information
(15 U.S.C. § 1681k(a), brought by Plaintiff on Behalf of
Himself and the Adverse Public-Record Information Class Members)**

129.    Plaintiff incorporates the preceding paragraphs as alleged above.

130.    Sterling compiled consumer reports for Hertz containing information regarding

Plaintiff and the Adverse Public-Record Information Class Members.

131.    Sterling included in these reports information available through public records

that was likely to adversely affect the ability of Plaintiff and the Adverse Public-Record

Information Class Members to obtain employment.

132.    Prior to taking these adverse employment actions, Sterling failed to either:

a.  inform Plaintiff and the Adverse Public-Record Information Class Members
    of the adverse information contained in the reports as well as the name and
    address of the report's recipient; or

b.  maintain strict procedures intended to ensure that the information contained in
    the reports was complete and up to date.

133.    As a result of Sterling's actions, Plaintiff and the Adverse Public-Record

Complaint for Violations of FCRA

Information Class Members have been deprived of their consumer rights and denied the ability to ensure that the information likely to adversely impact their ability to obtain employment was complete and up to date.

134. Defendants' conduct was willful, making them liable for statutory damages and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class Members pray for relief as follows:

(a) Certification of Plaintiff's FCRA claims as a class action pursuant to Federal Rule of Civil procedure 23;

(b) Designation of Plaintiff Peter Lee as representative of the Class Members;

(c) Designation of Plaintiff's counsel of record as Class Counsel;

(d) An order forbidding Defendants from engaging in further unlawful conduct in violation of FCRA;

(e) An award of actual or statutory damages for Defendants' willful or negligent conduct under FCRA;

(f) Exemplary and punitive damages to deter future misconduct in an amount commensurate with Defendants' ability to pay;

(g) Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(h) Pre-judgment and post-judgment interest, as provided by law;

(i) Payment of a reasonable service award to Plaintiff, in recognition of the services he has rendered and will continue to render to the Class Members, and the risks he has taken; and

(j) Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury in this action.

Complaint for Violations of FCRA

Dated:  June 9, 2015

Respectfully submitted,

By:    /s/ Jahan C. Sagafi
            Jahan C. Sagafi

Jahan C. Sagafi (SBN 227887)
jsagafi@outtengolden.com
Katrina L. Eiland (SBN 275701)
keiland@outtengolden.com
**OUTTEN & GOLDEN LLP**
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Meredith Desautels (SBN 259725)
mdesautels@lccr.com
Stephanie Funt (SBN 300152)
sfunt@lccr.com
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA**
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone:  (415) 543-9444
Facsimile:  (415) 543-0296

*Attorneys for Plaintiff and proposed Class Members*

Complaint for Violations of FCRA